UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

SUPPLEMENT MANUFACTURING PARTNER, INC.,
D/B/A SMP NUTRA,                                **MEMORANDUM AND ORDER**

                                    *Plaintiff*     22-CV-5106(KAM)(RER)

     -against-

HEALTHY AGAIN, LLC,
D/B/A GUMMY SPECIALISTS,
AND JOHN DOES 1-10,

                                    *Defendants*.

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Supplement Manufacturing Partner, Inc., d/b/a SMP Nutra,

("Plaintiff") commenced the instant action on August 26, 2022,

against Healthy Again, LLC, d/b/a Gummy Specialists ("Defendant"),[1]

alleging violations of the Copyright Act, 17 U.S.C. § 101, *et seq.*

for copyright infringement of Plaintiff's exclusive rights to its

website under 17 U.S.C. § 501.[2]  (*See* ECF No. 1, Complaint,

("Compl.").)  Plaintiff's motion for default judgment seeks

---

[1] Plaintiff also included as defendants John Does Nos. 1-10, as corporations
and other legal entities and/or individuals whose involvement with the
activities alleged were not currently known to Plaintiff.  (ECF No. 1, Complaint
at ¶ 10.)

[2] Plaintiff initially brought two additional claims, Count II (Declaratory
Judgment) and Count III (Trade Dress Infringement), against Defendant. (ECF No.
1, Complaint at ¶¶ 75-85.)  Plaintiff voluntarily withdrew these claims on
February 2, 2023.  (ECF No. 9, Notice of Voluntary Dismissal.)

permanent injunctive relief. (*See* ECF No. 11-1, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Default Judgment and Permanent Injunction, ("Pl. Mem."), at 7.)

For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### I.   Factual Background

Where a defendant defaults, a court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-88 (2d Cir. 2015). The Court consequently accepts the following well-pleaded factual allegations as true for the purpose of reviewing Plaintiff's motion for default judgment.

Plaintiff SMP Nutra is a New York corporation and manufacturer in the supplement industry. (ECF No. 1, Compl. at ¶¶ 1, 8.) Specifically, Plaintiff manufactures "nutraceutical" products, such as gummy or softgel vitamins and supplements. (*Id.*) On August 17, 2022, Plaintiff registered its website, www.smpnutra.com, with the United States Copyright Office, which issued a registration certificate. (*Id.* at ¶ 15; ECF No. 1-3, Ex. A.) Plaintiff alleges that it expended significant time, money,

and effort in the development of its website. (ECF No. 1, Compl. at ¶ 13.) Plaintiff alleges that it created original content, including the compilation and arrangement of text and images that are unique to SMP Nutra's website. (*Id.* at ¶ 14.) Plaintiff also alleges that the website is Plaintiff's primary point of contact with sellers and is integral to how it generates business. (*Id.* at ¶ 13.)

Defendant Healthy Again is a New York corporation in the supplement industry. Plaintiff alleges that Defendant is the latest incarnation of a manufacturer named ABH Nature's Products, Inc. and a related company named ABH Pharma ("the ABH companies"), both owned by Jahirul Islam. (*Id.* at ¶ 16.) Plaintiff acknowledges a contentious litigation history with the ABH companies and Jahirul Islam. (ECF No. 11-1, Pl. Mem at 7.) In October 2019, the ABH companies sued Plaintiff and several of Plaintiff's executives, asserting trademark claims; Plaintiff counterclaimed and alleged various causes of actions, such as unfair competition, breach of contract, and fraud. (ECF No. 1, Compl. at ¶ 23.)

Here, Plaintiff alleges that Defendant Healthy Again's website, www.gummyspecialists.com, copied significant portions of Plaintiff's website, www.smpnutra.com. (*Id.* at ¶ 3.) For example, Plaintiff contends that its "Meet the Team" page was reproduced on

3

Defendant's website using the name and photograph of Plaintiff's Managing Partner. (*Id.* at ¶¶ 25-27.) In addition, Plaintiff claims that Defendant replicated various aspects of Plaintiff's gummy vitamin manufacturing website page on Defendant's website, including the title, background videos, photos, text overlay, layout, and information provided about the gummy vitamin product. (*See id.* at ¶¶ 27-52; ECF No. 1-3, Ex. B.) Plaintiff also alleges that significant portions of its website's text were reproduced on Defendant's website with only minor alterations. (*See* ECF No 1-3, Ex. B.) Additionally, Plaintiff alleges that Defendant's website copied numerous other pages of Plaintiff's website, such as Plaintiff's softgel manufacturing capabilities page, supplement manufacturing capabilities page, order fulfillment capabilities page, home page, and "Request A Quote" page. (*See* ECF Nos. 1-5— 1-9, Exs. C-G.) Plaintiff claims there are significant similarities on these pages between the parties' websites' text, organization, design, and product information. (*Id.*)

Plaintiff contends that other elements of Defendant's website reveal Defendant's alleged copyright infringement of Plaintiff's website. Plaintiff alleges that Defendant used automated tools that directly migrated data and text from Plaintiff's website to Defendant's website, without removing identifying information specific to Plaintiff's website. (ECF No. 1, Compl. at ¶ 58.)

4

For example, Plaintiff asserts that Defendant's website directly copied Plaintiff's website's product offerings page. (*Id.* at ¶ 59.) Defendant's website displays specific products that it offers, which are identified in part by a SKU number. (*Id.*) Plaintiff alleges that Defendant reproduced Plaintiff's product offerings page because at least 30 products on Defendant's website refer to "SMP's SKU," and "SMP" is shorthand for Plaintiff's name, Supplement Manufacturing Partner. (*Id.* at ¶ 59; ECF No. 1-10, Ex. H.) Also, Plaintiff alleges that portions of its website that are no longer navigable have a corresponding non-navigable page on Defendant's website. (ECF No. 1, Compl. at ¶ 60.) Plaintiff additionally claims that Defendant's website's "Cascading Style Sheet files" — which determine the layout, color, fonts, and presentation style of a website — link directly to Plaintiff's website. (*Id.* at ¶ 61.)

Based on the above factual allegations, Plaintiff asserts a copyright infringement claim pursuant to 17 U.S.C. § 501 *et seq.* (ECF No. 1, Compl. at ¶ 64.) Plaintiff requests a permanent injunction that will (1) enjoin Defendant from further infringing or exploiting Plaintiff's copyrighted website and (2) order Defendant, and its domain registrar and webhost, to destroy the infringing website and transfer the underlying domain name to Plaintiff. (ECF No. 11-1, Pl. Mem. at 2.)

## II.  **Procedural History**

Plaintiff commenced the instant action on August 26, 2022. (*See* ECF No. 1, Compl.)  On October 13, 2022, Plaintiff properly served the Summons and Complaint on Defendant. (ECF No. 6, Summons Returned Executed.)  Although Defendant was properly served on October 13, 2022, it failed to answer, move, or otherwise respond to the Complaint.  On November 29, 2022, Plaintiff requested a certificate of default, which the Clerk of Court certified on December 5, 2022, based on Defendant's failure to appear or otherwise defend the action.  (ECF No. 7, Request for Certificate of Default; ECF No. 8, Clerk's Entry of Default.)

On February 2, 2023, Plaintiff moved for default judgment. (*See* ECF No. 11, First Motion for Default Judgment.)  Plaintiff filed an affirmation of service on February 17, 2023, indicating that Plaintiff had mailed a copy of the motion for default judgment and supporting materials to Defendant at its last known business address.  (ECF No. 12, Affirmation of Service.)  To date, Defendant has not appeared, answered, or otherwise responded to the Complaint or the motion for default judgment.

### LEGAL STANDARD

## I.  **Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55, a movant must complete a two-step process to obtain a default judgment.

*Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 346-47 (E.D.N.Y. 2009). First, the Clerk of the Court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Second, upon the Clerk's entry of default, the movant "may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)." *Rodriguez*, 784 F. Supp. 2d at 123. "'The court is to exercise sound judicial discretion' in determining whether the entry of default judgment is appropriate." *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011) (quoting *Badian v. Brandaid Commc'ns Corp.*, No. 03-CV-2424, 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011)). "In evaluating a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), the [c]ourt must accept as true the well-pleaded allegations in the complaint," except those relating to damages. *Id.* at *2 (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999)). Further, the non-defaulting party is "entitled to all reasonable inferences

7

from the evidence offered." *See Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Here, the Clerk of Court entered default against Defendant on December 5, 2022.  (ECF No. 8.)  Plaintiff thereafter filed an unopposed motion for default judgment presently before the court. (ECF No. 11.)  As noted, the Summons and Complaint were properly served on Defendant, (ECF No. 4.), as was the motion for default judgment.  (ECF No. 12.)  Defendant has neither appeared, nor moved to vacate the Clerk's entry of default, nor opposed the motion for default, despite being provided notice.  Consequently, Plaintiff has completed the necessary procedural steps to obtain a default judgment.  *Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-CV-4778, 2007 WL 3046359, at *2 (E.D.N.Y. Oct. 16, 2007) ("In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.") (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

## DISCUSSION

### I.  Liability

Defendant's default in this case, however, "does not necessarily conclusively establish . . . defendant['s] liability." *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*,

No. 05-CV-1665 (NG)(RLM), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007). As such, this Court "must still determine whether . . . plaintiff has stated a cause of action." *Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325 (ARR)(JO), 2009 WL 982424, at *3 (E.D.N.Y. Apr. 10, 2009) (citing *Au Bon Pain Corp.* at 65); *see also, e.g.*, *Philip Gen. Constr.*, No. 05 CV 1665 (NG)(RLM), 2007 WL 3124612, at *3 ("[E]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989))).

## A. Copyright Infringement

Plaintiff alleges that Defendant infringed its copyright under Section 501 of the Copyright Act ("the Act"). (ECF No. 1, Compl. at ¶ 64.) Among other things, the Act vests the owner of a copyright with:

> The exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . .

17 U.S.C. § 106(1)-(3).

"Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or

9

culpability."[3]  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963).  In order to establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

For purposes of default judgment, ownership of a valid copyright "can be established by the introduction into evidence of a Copyright Office certificate of registration."  *Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688(PKC)(VMS), 2020 WL 207352, at *2 (E.D.N.Y. Jan. 14, 2020) (quoting *Sheldon v. Plot Commerce*, No. 15-CV-5885(CBA)(CLP), 2016 WL 5107072, at *11-12 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)).  Here, Plaintiff submitted a Certificate of Registration (the "Certificate") for its website

---

[3]  Plaintiff alleges that Defendant is liable for "willful" copyright infringement. (ECF No. 11-1, Pl. Mem. at 4.)  Given that copyright infringement is a strict liability offense, however, Defendant's intent is not relevant in determining liability.  *See EMI Christian Music Grp.,* F.3d at 89.  Intent is relevant only to determine whether enhanced statutory damages apply.  *See* 17 U.S.C. § 504(c).  Here, Plaintiff does not seek damages.  Therefore, whether Defendant engaged in "willful" copyright infringement is immaterial.   The Court notes that the Complaint cites to 17 U.S.C. § 506 in support of its claim of "willful" copyright infringement.  (ECF No. 1, Compl. at ¶¶ 70-71.)  This is meritless.  Section 506 considers a defendant's willfulness, but only in the context of criminal copyright infringement.  Accordingly, the Court does not assess Defendant's intent.

with an effective date of registration of August 10, 2022.  (ECF No. 5-2, at 1.)  The Certificate lists the author as Supplement Manufacturing Partner, Inc.  (*Id.*)  Further, in a Certificate of Registration, the "Author Created" field establishes the scope of the copyright.  *ID Tech LLC v. Toggle Web Media* LLC, No. 20-CV-5948(EK)(RER), 2023 WL 2613625, at *4 (E.D.N.Y. Mar. 23, 2023).  In Plaintiff's Certificate, the "Author Created" field includes "text, photograph(s), artwork, Website text; some photographs; some artwork; compilation of text, artwork, and photographs." (*See* ECF No. 5-2, Copyright Registration at 1.)  Therefore, the Court finds that Plaintiff has established ownership of a valid copyright for its website.

To meet the second requirement of copyright infringement — the copying of constituent elements of original work — Plaintiff "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  "Actual copying may be shown by direct or indirect evidence," and indirect evidence includes "proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works." *Id.*  Regarding "illegal" copying, "[t]he standard test for

11

substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010). "In applying the so-called 'ordinary observer test,'" courts ask "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* This is guided by "comparing the contested design's total concept and overall feel with that of the actually infringed work." *Id.* Copyright infringement can occur "not only through literal copying," but also "by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another," including "the excerpting, modifying, and arranging of [unprotectible components]." *Id.* (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy Inc.*, 338 F.3d 127, 134 (2d Cir. 2003).

Plaintiff successfully established through direct and indirect evidence that Defendant "actually copied" Plaintiff's copyrighted website. First, direct evidence demonstrates that Defendant's website refers to "SMP's SKU" for its product codes, contains links to Plaintiff's non-navigable website pages, and utilizes Plaintiff's "Cascading Style Sheets" that link directly

to Plaintiff's website.  (ECF No. 1, Compl. at ¶¶ 59-61.)  Second, indirect evidence also supports that Defendant "actually copied" Plaintiff's website.  Defendant had access to Plaintiff's copyrighted website because the website is publicly available. Additionally, the parties are familiar with one another because they are in the same industry and have a contentious litigation history.  (ECF No. 11-1, Pl. Mem. at 7.)  There are also numerous similarities between the works that are probative of copying. Side-by-side comparisons of the parties' websites establish a significant resemblance between the websites' layout, images, titles, and text.  (*See* ECF Nos. 1-4—1-10 Exs. B-H.)

Plaintiff also has established that substantial similarities exist between Defendant's website and protectible elements of Plaintiff's website.  Based on the ordinary observer test, an average lay observer could easily conclude that the "total concept" and "overall feel" of Defendant's website was replicated from Plaintiff's website.  For example, Defendant's gummy manufacturing page mimics Plaintiff's website by using the same text, color scheme, and multi-column tables to organize text.  (ECF No. 1, Compl. at ¶¶ 33-36.)  Additionally, Defendant only made minimal changes to Plaintiff's text, such as only replacing the company name on some pages, or making minor substitutions in the website's language, such as using the word "prepped" instead of "prepared,"

or "in comparison to" instead of "compared." (ECF No. 11-1, Pl. Mem. at 6; ECF No. 1-4, Ex. B at 1, 3, 13.)  There are also multiple instances where Defendant's webpage uses the exact same title and images as Plaintiff's.  (ECF No. 1, Compl. at ¶¶ 25-26; 30-33; 35-38; 41-44; 49-50.)  These similarities occur on multiple pages of Defendant's website, including the "Meet the Team" page (*Id.* at ¶¶ 25-26.), the softgel manufacturing capabilities page (ECF No. 1-5, Ex. C.), the supplement manufacturing capabilities page (ECF No. 1-6, Ex. D.), the order fulfillment capabilities page (ECF No. 1-7, Ex. E.), the home page (ECF No. 1-8, Ex. F.), and the "Request A Quote" page.  (ECF No. 1-9, Ex. G.)  The abundant evidence of substantial similarities is further supported by evidence of Defendant's website's pages linking directly to Plaintiff's website, particularly those that govern layout, color, fonts, and presentation style.  (ECF No. 1, Compl. at ¶¶ 59-61.)

Other courts have found that copyright infringement exists where actual copying occurred, and the two websites have substantial similarities.  In *BMaddox Enterprises LLC v. Milad Oskouie*, the court emphasized that the content of two websites was virtually identical, with only minor modifications, in holding that copyright infringement had occurred.  No. 17-CV-1889 (RA), 2021 WL 3675072, at *8-9 (S.D.N.Y. Aug. 18, 2021).  Notably, the court based its findings on a side-by-side comparison showing that

the same content and arrangement of information was on each website. *Id.* Additionally, information available on each website contained the same title, structure, and images. *Id.* Therefore, the court found the "look and feel" of each website was sufficient to establish substantial similarities, and thus copyright infringement. *Id.*

The Court notes that not all copying of copyrighted material is considered infringement, as some elements of copyrighted work are not protected. *Attia v. Society of N.Y. Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999). Copyright protection does not "extend to any idea, procedure, process, system, methods of operation, concept. . .[,] or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* (quoting 17 U.S.C. § 102(b)). What is protected, however, is the way the author expresses those ideas, such as "selection and arrangement," as long as the author independently made these choice with a minimal degree of creativity. *Feist Publ'ns*, 499 U.S. at 348.

Therefore, while Plaintiff's process of producing and manufacturing products is not protected, the way that Plaintiff expresses the process, through text, charts, and illustrations, *is* protected. Plaintiff's Certificate protects its decisions of how to organize, illustrate, and market its products on its website,

including the choices made in layout, color scheme, titles, and text.  Because Plaintiff made its website with the requisite "minimal degree of creativity," Plaintiff's copyrighted material is protected.

Plaintiff's allegations establish that (1) Plaintiff owned a valid copyright and (2) Defendant copied constituent elements of Plaintiff's website that were original.  Accordingly, the Court finds that Defendant is liable for copyright infringement under the Copyright Act.

## II. Permanent Injunction

Plaintiff seeks a permanent injunction that will (1) enjoin Defendant from further infringing or exploiting the copyrighted SMP Website and (2) order the Defendant, and its domain registrar and webhost, to destroy the infringing website and transfer the underlying domain name to Plaintiff.  (ECF No. 11-1, Pl. Mem at 2.)

A district court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also id.* § 1203(b)(1).  A court may grant a permanent injunction where a plaintiff demonstrates that: "(1) it suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the parties warrants

16

a remedy in equity of the plaintiff; and (4) the public interest would not be disserved." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "Courts routinely grant injunctive relief in copyright cases where liability is established and there is a threat of continuing infringement." *Wareka v. Dryluxe LLC*, 21-CV-2422 (MKB)(LB), 2022 WL 2467544, at *3 (E.D.N.Y. Apr. 7, 2022) (quotations and citation omitted), *report and recommendation adopted*, 2022 WL 2753106 (E.D.N.Y. July 14, 2022).  Additionally, the Copyright Act authorizes courts to order the destruction of infringing products. *See* 17 U.S.C. § 503(b).

Here, all four factors weigh in favor of the Court issuing a permanent injunction ordering Defendant to deactivate the infringing website.  Regarding irreparable injury, courts issue injunctions in copyright cases because it is "notoriously difficult" to prove the loss of sales due to infringement and "the threat of continuing violations establishes the necessary irreparable harm." *Sadowski v. Yeshiva World News, LLC*, 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023) (citations omitted).  The second element is established because Defendant's infringing website remains publicly accessible and "[a] plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright[]." *Id.*  Third, the balance of hardships favors

17

Plaintiff because Defendant "has defaulted and thus fail[ed] to identify any legitimate hardship." *Wareka v. Dryluxe LLC*, No. 21-CV-2422 (MKB)(LB), 2022 WL 2467544, at *3 (E.D.N.Y. Apr. 7, 2022); *see also McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500 (S.D.N.Y. 2018) ("It is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product.") Lastly, issuance of a permanent injunction serves the public interest in protecting copyright owners' rights to encourage production of creative works. *See Wareka*, 2022 WL 2467544, at *4. Accordingly, the Court grants Plaintiff's request for a permanent injunction ordering Defendant to deactivate the infringing website.

As for injunctive relief transferring Defendant's domain name, some "[c]ourts within [the Second Circuit] have granted orders transferring domain names to prevent further infringement of copyright holder's rights." *Asia TV USA Ltd. v. Kamran Int'l Trade Limited*, No. 17-CV-5057 (FB), 2018 WL 6313215, at *11 (E.D.N.Y. Sept. 25, 2018), *report and recommendation adopted*, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018); *see also Paramount Pictures Corp. v. Does*, No. 15-cv-5819, 2015 WL 10013786, at *4 (S.D.N.Y. Nov. 24, 2015) (ordering the transfer of domain names to plaintiff's ownership and control). Other courts in this circuit, however, have declined to issue third-party injunctions

transferring domain names to plaintiffs. *See BWP Media USA Inc. v. NV Media Group, Inc.*, No. 13-CV-8866 (DAB), 2015 WL 2152679, at *2 (S.D.N.Y. May 6, 2015) (distinguishing cases that permitted domain transfers where trademarked items were within the domain names, not domain names that lead to websites containing protected content); *see also Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. Nov. 10 2008) (declining to transfer a domain name absent proof of continued sale of infringing products).

Courts have also noted possible jurisdictional concerns with issuing third-party injunctions that impact parties not before the court. *See Asia TV USA Ltd.*, 2018 WL 6313215, at *11. Some courts have raised concerns that they lack the jurisdictional authority to order a non-party domain registry to affirmatively act to transfer infringing domain names to plaintiffs' ownership and control. *See North Face Apparel Corp. v. Fujan Sharing Import & Export Ltd. Co.*, No. 10-CV-1630, 2011 WL 12908845, at *2 (S.D.N.Y. June 24, 2011) (holding the court only had the authority to enjoin a non-party domain registry from "aiding and abetting, or participating, in defendants' unlawful activities"). Further, courts have declined to order permanent injunctions against non-party domain registrars to transfer domain names where plaintiffs have failed to provide admissible facts regarding non-parties' conduct and/or legal standards regarding injunctions against non-

parties.  *See Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, 07-CV-1784(RMB)(GWG), 2007 WL 3287368, at *7 (S.D.N.Y. Nov. 7, 2007) (declining to order injunctive relief against non-parties to "freeze the registration" for the domain name and order "that the name servers be deleted and left blank"); *accord Asia TV USA Ltd.*, 2018 WL 6313215, at *12 (noting that a third-party injunction against a webhost could be imposed where plaintiff submitted evidence that defendant had "ignored over 75 cease and desist letters and continue[d] to infringe on plaintiffs' copyrighted material").

Here, neither the domain registrar nor the webhost that would be impacted by an injunction ordering a transfer of Defendant's domain name are parties to this suit, nor are they specifically identified by Plaintiffs.  Additionally, based on the lack of allegations in the complaint, the domain registrar and webhost did not "aid, abet, or participate," or help "bring about" Defendant's copyright infringement.  *See North Face Apparel Corp.*, 2011 WL 12908845, at *2.  Notably, Plaintiff also failed to address the non-parties' conduct or cite to caselaw that would permit the Court to order injunctive relief against the non-parties.  Thus, the Court declines to order that the non-parties must disable or render inactive Defendant's infringing website and transfer the domain name to Plaintiff's control.

Accordingly, the Court grants Plaintiff's request for a permanent injunction to order Defendant to cease infringing or exploiting the copyrighted SMP website and to disable Defendant's infringing website.  The Court respectfully denies Plaintiff's request to order the domain registrar and webhost to disable and transfer its domain to Plaintiff.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for default judgment is **granted in part and denied in part**.  Plaintiff is entitled to a permanent injunction against Defendant for the infringing conduct, and Defendant must cease infringing or exploiting Plaintiff's copyrighted SMP website and must disable use of Defendant's website. The Clerk of Court is respectfully directed to enter judgment, and to close the case.  Plaintiff is ordered to serve a copy of this Memorandum and Order and the judgment on Defendant and file a declaration of service once the Clerk of Court enters judgment.

**SO ORDERED.**

Dated:      August 16, 2023
            Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

21